Our last case for argument this morning is Johnson v. Sevier. Mr. Wenzel, whenever you're ready. May it please the court, my name is Jacob Wenzel and I represent the habeas petitioner in this appeal, Mark Johnson. This court should reverse the district court's order denying Mr. Johnson's habeas petition for each of two reasons. The first is that the state destroyed a blood sample of the alleged victim, A.T., in bad faith and violation of Arizona v. Youngblood and the Indiana Court of Appeals unreasonably rejected that claim. The second is that the state trial court impermissibly excluded evidence of DNA regarding other individuals than Mr. Johnson that was found on some samples of A.T. and again the state, the Indiana Court of Appeals unreasonably rejected that claim under Chambers v. Mississippi. I want to start with the blood sample issue first. Arizona v. Youngblood holds that a conviction cannot stand if the government destroyed potentially exculpatory evidence in bad faith and that is exactly what happened here. Mr. Johnson asked the relevant law enforcement officer, Detective Laura Smith, more than 10 times during his interrogation to test A.T.'s blood sample on the view that it would show that she was high on crack during the incident in question would undermine her story and provide powerful exculpatory evidence for Mr. Johnson. Detective Smith heard him say more than 10 times, please test this blood sample. The blood sample was available. Detective Smith had every opportunity to make sure that that blood was tested and instead Detective Smith took absolutely no action whatsoever to make sure the blood was tested. It was discarded the next day. The court held a detailed hearing on this in which he heard from the officer and the court made a good faith finding. How do you get around, how would that be clearly established given again the detailed credibility finding by the court based on her testimony? Your Honor, the trial court was there listening to the testimony and made a credibility determination but that credibility determination is not insulated from review. There's a clear and convincing evidence standard under AEDPA to the extent that the court based its good faith finding on a determination that Detective Smith in fact subjectively believed that this policy existed. Your Honor, that testimony is completely preposterous. I think the cold record demonstrates that it's preposterous. How is it preposterous when it's made on a credibility determination based on her prior experience? Your Honor, her prior experience I submit is exactly what makes it preposterous. Detective Smith was a 10-year veteran of the Sex Crimes Department. This policy would have implicated virtually every investigation that she was a part of or at least a large number of those investigations and it wasn't simply that Detective Smith wasn't aware of the policy on the day at question. It was that she had practically no information about when the supposed policy was implemented, when it was changed. She had no knowledge of the policy being effective since she, quote, came to sex crimes. That was 10 years ago. Do you agree that that finding by the court is a factual finding that you would have to rebut with clear and convincing evidence? Your Honor, I would agree that to the extent the court determined that Detective Smith in fact subjectively believed the policy existed, that is a factual finding that we could overcome with clear and convincing evidence, which is the rest of Detective Smith's testimony showing that, you know, her supposed misunderstanding of the policy is simply not believable. However, even if you actually grant the testimony or the state court's finding that she did subjectively believe this policy was in effect, I submit that there's still a sufficient basis to find good faith here. The inference, if not unbelievable, then Detective Smith's testimony was intolerable and demonstrated a dereliction of duty. It was her professional responsibility to know what the policy is that applies to sex crimes investigation. Why isn't that negligence versus bad faith? Your Honor, the line between negligence and bad faith is fine, and I do believe that a intolerable dereliction of duty, which is the best that you could say for this testimony, falls closer, falls on the line of bad faith. In Arizona versus Youngblood, the court draws a line between good faith and bad faith. And if you were to put testimony, if you were to assign Detective Smith's misunderstanding to one of those two buckets, it's clearly bad faith. This is her professional obligation to know what the policy was. She worked in sex crimes for 10 years, and she took absolutely no steps to refresh her memory about the policy, to ensure that the policy thought existed, in fact existed. She even spoke to the examining nurse, and I would submit that her conversation with the examining nurse, which the state used as evidence of good faith, shows the exact opposite. Now, Arizona versus Youngblood—  How does it show the opposite? I can see that it would show the opposite if the nurse told the detective that AT appeared to be under the influence, and then Detective Smith did nothing about it, tried to hide it. But given the fact that the nurse told Detective Smith that there were no signs that AT was under the influence, how is that evidence of bad faith? Your Honor, I would—I have two responses to that. First, Detective Smith testified before the state trial court that she was essentially aware that the impressions that were conveyed by the examining nurse were not probative because a crackhead doesn't last more than 20 minutes to an hour. This was hours after the fact. She knew, as she was asking these questions, that impressions of the examining nurse hours after the fact were not probative of whether, in fact, AT was on crack. Furthermore, in Arizona versus Youngblood, the standard that the court articulated for bad faith is that the police themselves, by their conduct, indicate that the evidence could form a basis for exonerating the defendants. Here you have Detective Smith telling Mr. Johnson, I don't care about the dope, which is evidence of animosity, another factor of bad faith, but then contrast that with her going and asking the examining nurse, did she seem like she was high? She believes that if, in fact, she was high, the questioning indicates her belief that if, in fact, Mr. Johnson's version of events was true, it could form a basis to exonerate the defendant. So it's her awareness and sort of acknowledgment of the potential exculpatory value, and that value cannot be revealed unless the evidence was actually tested. We'll never know what it said. If the jury had heard that AT's version of events was based on a glaring inconsistency with the physical evidence, there's certainly a reasonable probability that the verdict would have been different. Oh, if there's no further questions on that issue, I want to jump to the second issue, Your Honors. Could you address, on the second issue, that's a good segue. Can you address the issue of procedural default? Yes, Your Honor. On the procedural default, the question is whether the state court had the opportunity to correct the error that is being claimed in this court. And the answer, under Indiana law, which is controlling, is undisputably yes. A decision that we cited, State v. Savage, demonstrates that the Indiana Supreme Court has the ability to reach any issue that is presented to the Court of Appeals on a petition for review, and even reverse on issues that are not raised in the petition. But how does the Supreme Court know that when it's trying to decide to grant the petition for review when that issue isn't raised in the petition itself? Your Honor, in theory, the court could look at the record at that stage, but I don't believe that that's relevant. I believe the relevant standard is whether the court had the opportunity to correct that error, and here, the court absolutely had that opportunity. Then you'd never have procedural default under your argument, because if there's an error that hasn't been raised with the Supreme, with the court, every time you could say, well, there's an error, and we came before the court, the court could have corrected it. Your Honor, I would submit that in this specific posture, which is very limited, that the bases for procedural default are thin. My understanding is the Indiana Supreme Court's practice with this reaching any issue that was before the Indiana Court of Appeals is unique. It only arises on a petition to transfer on direct review. The State cited a couple of cases in its brief where the rule would have been different in a different posture, even in Indiana, so we're talking about a specific posture before a specific court, and the case law makes clear the issue was not waived under Indiana law. Reaching the merits, and I want to address this briefly, and I think the issue is set forth in our brief well, but on the merits, there's a balancing test between Mr. Johnson's interests and the State's, and I would submit, Your Honor, that the Indiana Court of Appeals botched that analysis badly. Mr. Johnson's interest was, the evidence was highly probative to Mr. Johnson's defense in particular as to the source of the bruising. The State made the bruising on A.T.'s arm a linchpin of its closing argument of its evidence against Mr. Johnson. The bruising was evidence of an entire essential element of the crime, which was force. At that time, you had to show force, and the State used the bruising exclusively as the  The State opened the door in that regard to evidence of alternative sources of the bruising. The DNA in particular of A.T.'s ex-boyfriend was probative of an alternative source of the bruising. Without the bruising, Your Honor, there is no conviction. There is no evidence of an essential element of the charge. Contrast that with the State's interest. The State's interest arises under the rape shield law, but this evidence is not exactly the type of evidence that the rape shield law is meant to exclude for three reasons. First of all, we're talking about a very narrow window of evidence. It was not a generalized inquiry into A.T.'s sexual history. We're talking about DNA that must have been placed, must have happened within the past 24 to 72 hours. So we're talking about a very narrow window. We're talking about evidence that could show an alternative source of bruising, which, if not an exception to the rape shield law, is at least on the outskirts of it. And the court also, and I'll make this brief, Your Honor, is the court also could have gotten the evidence in a limited way that would have made Mr. Johnson able to make the arguments he wanted to make. And, Your Honor, it's for each reason I've asked that the—well, I'll reserve the rest of my time for rebuttal. Actually, I'm out of time, so I will ask that the court please reverse the district court. Thank you. Ms. Murray. May it please the court. This court should affirm, because this state court reasonably applied clearly established federal law, the state court reasonably applied Trombetta and Youngblood when it concluded that the state did not act in bad faith. When the rape victim's remaining blood was discarded pursuant to standard operating procedures after a DNA blood card stain was made and preserved, the state court made a reasonable factual determination when it concluded that Detective Smith made an honest mistake because she believed the victim's blood would be subjected to toxicology testing. That had been the policy at one time, and these conclusions are supported by Detective Smith's testimony. Is there anything that refutes that that had been the policy at one time? There is not, no, and the evidence indicates that this was a recent change. She said this issue had not come up before, and to the extent that there is a lack of evidence about the policy or when the policy changed, that rests on Mr. Johnson's shoulders because it was his burden to prove bad faith. He had the opportunity to present evidence to prove bad faith, and his failure to do so rests on his shoulders alone. Do you agree with what Mr. Wentzel has argued in his brief that the ultimate determination of bad faith is a question of law? It's a mixed question of law and fact. There are factual determinations that would go into the ultimate legal conclusion of whether or not those facts amount to bad faith. It was absolutely reasonable to rely on Detective Smith's testimony. She was an experienced police officer, and she testified that she at one point knew this was the policy and that it was the policy for certain hospitals as well. A trial court was well within its right to rely on her testimony, and the Court of Appeals as well relied on that testimony and found that it was an honest mistake. Because there is evidence in the record supporting these conclusions, it is not a question about whether this is an unreasonable factual determination. The testimony was not inherently contradictory or incredible in any way, shape, or form. So then the question becomes whether or not the state court reasonably applied clearly established federal law, and here they absolutely did. This case aligns with Youngblood very much in the circumstances and the analysis. In Youngblood and in this case, we are dealing with the omission of action. In Youngblood, it was the failure to refrigerate the victim's clothing. Here Detective Smith did not insert herself into the standard operating procedures of the crime lab to ensure that this evidence would be preserved. Notably, she was unaware she had to do so. She believed that the testing Mr. Johnson desired would be completed as a matter of course, but it is the omission of action that we are dealing with. And the analysis is identical. In Youngblood, they looked at the omission of action and said at most, at worst, this may be characterized as negligence, but it does not rise to bad faith. And here too, that is precisely the analysis used by the state court, that this omission of action did not rise to the level of bad faith, but was mere negligence. This is not the intentional deprivation of evidence, which is what bad faith requires. This court has stated that it requires some animus on the part of the state, and we simply do not have that here. What about Detective Smith's statement that, you know, I don't care about the dope, I don't care if she got high during the interview. That seems to suggest a particular position with regard to that issue. That's an accurate reflection of Indiana law, that a victim may be intoxicated and may still be raped. And that is what that statement is meant to emphasize. She did become animated and frustrated with Mr. Johnson during that interview because she was trying to get him to answer specific questions, and he refused to answer those specific questions, but repeatedly pointed to alleged drug use on the part of the victim. And she was trying to get him to understand why that response was not helpful to her. And that is simply because a victim may be intoxicated and still be raped. To the extent that the interview may be viewed as demonstrating some sort of bad faith, that does not entitle Mr. Johnson to relief under the Anti-Terrorism and Effective Death Penalty Act. The question is whether reasonable people could disagree, and here someone can look at the video, can look at Detective Smith's testimony, and though they may disagree about whether or not it shows bad faith, the fact that they can means that Mr. Johnson is not entitled to relief. I'd like to briefly address his procedural default argument, if I may. The United States Supreme Court has rejected the idea that a petitioner barely presents an argument by presenting it to a court below. In Baldwin v. Reese, they stated that a court is not required to look through a petition or brief presented to that court. This court in Huff v. Anderson has stated that a petitioner must present an issue to the Indiana Supreme Court in a petition to transfer in order to fairly present that issue. His specific argument regarding the transfer rules has been rejected by this court in an unpublished decision, but the logic of that decision is sound. The standard is not whether a court has an opportunity. The standard is whether the court has a fair opportunity, and an issue is not fairly presented unless the operative facts and law are presented to the court. If those operative facts and law are not presented to the court, the petitioner is indicating that the issue has been resolved in an appropriate manner. Here, the only reference to this issue was in a footnote, and it did not even alert the court that there was a federal issue. It simply said due process, which is very similar to Baldwin v. Reese, where the petition simply said ineffective assistance of counsel and did not specify the federal nature of the claim. So, it is procedurally defaulted. If there are no further questions, we ask that you affirm. Thank you. Thank you. Mr. Wentzel, you had used all your time, but if you've got anything further, I'll give you some extra time to rebut. Your Honor, I'll make this very brief. On the Youngblood issue, the detective's testimony that she was unaware of the policy falls on the line of bad faith versus good faith. The Supreme Court has not held that intentional misconduct is the standard for bad faith. The Supreme Court has drawn a line between good faith and bad faith, and there's no world in which a sex crimes veteran doesn't know the policy for testing a blood sample constitutes good faith. You don't dispute that the policy had recently changed, do you? Your Honor, I don't believe there is evidence as to the change in the record before this court. The testimony is that it was Detective Smith's belief that it had changed. I don't believe there is corroborating evidence, and I don't believe that there was any detail about the nature of the change either. Even if it had changed, again, she's a veteran of the sex crimes. It was her professional obligation to know what the policy was. Omission versus action, which my friend on the other side drew a distinction between, is also irrelevant here because action was required to do what Mr. Johnson asked, which was to test it. Omission is the same as destroying the evidence if the evidence is going to be destroyed without any action. And as Judge Lee suggested, the statement, I don't care about the dope, reveals her animus. It's a relevant factor, and it undermines her testimony that she actually didn't know about the policy. Briefly, on the procedural default issue, the standard that this court and the Supreme Court has articulated repeatedly is whether or not the state court had an opportunity to correct the errors before this court, and the answer is clearly yes. The cases cited in both sides' briefs indicate that the issue is not waived. Even the state's case, St. Vincent Hospital, clearly indicates that an issue is not defaulted simply by not being put in the petition to transfer. And with that being said, Your Honors, I will rest my case and ask this court to please reverse. Thank you. And Mr. Wentzel, you and your firm took this case on appointment of the court, and you have our thanks for your service to the client and the court. That concludes our cases for today, and the court will be in recess until tomorrow.